# UNITED STATES BANKRUPTCY COURT
## FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**CAPITOL BC RESTAURANTS, LLC,**                                Chapter 11
    Debtor                                                Case No. 16-12666-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**CAPITOL BC RESTAURANTS, LLC,**
    Plaintiff
v.                                                                                        Adv. P. No. 17-1018
**COMMISSIONER OF INTERNAL REVENUE,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the Motion to Dismiss filed by the United States of America on behalf of the Internal Revenue Service ("IRS"). The IRS seeks dismissal of the Debtor's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and (6) for failure to state a claim upon which relief can be granted. *See* Fed. R. Bankr. P. 7012(b). The Debtor filed an Opposition to the Motion. The Court heard the Motion and Opposition on May 10, 2017 and took the matter under advisement.

1

In its Complaint, Capitol BC Restaurants, LLC (the "Plaintiff" or the "Debtor")

states the following:

> The Debtor and Petitioner Capitol BC Restaurants LLC brings this action to
> object to the proof of claim of the [IRS], seek a determination of the amount
> of that claim in accordance with 11 USC [sic] § 505 and to petition for a
> redetermination of the deficiency (or liability) set forth by the
> Commissioner of Internal Revenue in the Commissioner's notices of
> deficiency (or liability) dated November 30, 2016 and December 6, 2016.[1]

Although the Debtor is a limited liability company that is wholly owned by Capitol BC,

LLC, which, in turn, is owned, according to the Debtor, by "direct and indirect members,"

including Banyan Mezzanine Fund L.P., the Debtor annually filed Form 1065, U.S. Return

of Partnership Income, prior to the commencement of its bankruptcy case.   It is

undisputed that the Debtor is not liable for any taxes except those relating to Social

Security and Medicare withholding taxes ("FICA") and unemployment withholding

taxes ("FUTA"), for which the IRS filed and later amended a proof of claim.  The Debtor,

in its Complaint, did not mention, let alone set forth grounds for objecting to, the FICA

and FUTA claims set forth by the IRS in its original and amended proofs of claim.

Accordingly, in seeking a determination of the IRS's "claim," as will be set forth in detail

below, the Debtor, in actuality, is seeking a redetermination of the amount of deductions

available to it for costs of goods sold and inventory and the imposition of penalties that

will pass through to, and affect the income taxes owed by the Debtor's "partners."

The dispositive issue is whether this Court has jurisdiction to determine, in the

---

[1] As discussed in more detail below, the only proof of claim filed by the IRS, which it
amended after the filing of this adversary proceeding, involved FICA and FUTA taxes
for which the Debtor is liable, not income taxes for which the Debtor is not liable.

Debtor's bankruptcy case, the income tax liability of its "partners," where the Debtor is treated as a partnership for tax purposes, and is seeking an adjustment of deductions and penalties imposed by the IRS pursuant to 11 U.S.C. § 505(a) where it is not liable for any such income taxes and where its "partners" are solely liable for any income taxes owed.[2]

## II. BACKGROUND

Capitol BC Restaurants, LLC filed a voluntary Chapter 11 petition on July 13, 2016.[3]  Its case is jointly administered with the case of its parent, Capitol BC, LLC, Case No. 16-12243-JNF.  In the Debtor's bankruptcy case, the IRS filed a proof of claim on August 30, 2016 in the amount of $4,286,536.83.  Of that amount, it claimed $2,979,348.10 was entitled to priority for FICA and FUTA taxes and the balance was unsecured.  On April 5, 2017, after the filing of this Complaint, it filed an amended proof of claim in the amount of $4,213,964.85.  Of that amount, $2,894,323.49 was for FICA and FUTA taxes entitled to priority under 11 U.S.C. § 507(a)(8) and $1,319,641.36 was for an unsecured "penalty to date of petition on unsecured priority claims (including interest thereon)."

On February 27, 2017, the Debtor filed a Motion to Retain Special Counsel to Prosecute Tax Matters together with the Affidavit of Peter J. Haley, Esq.  Pursuant to its Motion, the Debtor sought authority to retain Attorney Haley and the firm of Nelson, Mullins, Riley & Scarborough, LLP which "acts as counsel to Banyan Mezzanine Fund,

---

[2] At the hearing, counsel for the Plaintiff represented that "notice partners" filed petitions in tax court with respect to issues raised in the Complaint.

[3] The Court may take judicial notice of its own docket. *See* <u>LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)</u>, 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

L.P. ("Banyan"), a secured creditor in this proceeding and post-petition lender to the

Debtor."   In its motion, the Debtor also disclosed that certain affiliates of Banyan hold

equity interests in the Debtor's parent, Capitol BC, LLC, and that Banyan had agreed to

be directly responsible to the firm of Nelson, Mullins, Riley & Scarborough, LLP for all

fees and expenses incurred because the Debtor lacked the financial means to fund the

litigation.  The Court granted the Debtor's Motion on March 14, 2017 in the absence of

objections from any parties in interest.

The U.S. trustee has moved to convert the Debtor's Chapter 11 case to a case under

Chapter 7.  On May 10, 2017, by agreement, the Court continued the hearing on the U.S.

trustee's motion to permit finalization of the sale of a liquor license.  Upon completion of

that transaction, the Debtor has represented through counsel that it will consent to the

conversion of its Chapter 11 case to a case under Chapter 7.

## III. THE COMPLAINT

The Plaintiff filed a Complaint on February 28, 2017 against the IRS "to object to

the proof of claim filed by the IRS" and to seek a determination of the amount of "that

claim" in accordance with 11 U.S.C. § 505, as well as "to petition for a redetermination of

the deficiency (or liability) set forth in IRS's notices of deficiency (or liability)" under

certain notices issued by the IRS. The Plaintiff also represented that the IRS had filed a

proof of claim in the amount of $4,286,536.83.  As noted above, the IRS amended its proof

of claim after the filing of the Complaint.

Specifically, the Plaintiff alleged that the IRS issued Notices of Final Partnership

Administrative Adjustment ("FPAA Notices") on November 30, 2016 and December 6,

4

2016, after the commencement of its case on July 13, 2016.  According to the Plaintiff, "[t]he adjustments as determined by the Commissioner are to net earnings (income taxes) for the calendar years ending on 12/31/2013 in the amount of ($11,267,455.00) and 12/31/2014 in the amount of ($11,048,436.00), all of which is in dispute."   The adjustments for the tax years ending on December 31, 2013 and December 31, 2014 were to inventory, cost of goods sold, and expenses, and included the imposition of "a 20 percent accuracy-related penalty under IRC Section 6662 for tax attributable to adjustments of partnership items determined," and "a 20 percent accuracy-related penalty due to negligence or disregard of rules and regulations as provided by IRC Section 6662(c)" for both tax years.  *See* 26 U.S.C. § 6662.

The Plaintiff alleged that the imposition of the 20 percent penalties was unwarranted and that the adjustments made by the IRS were based upon numerous errors, including errors in "in issuing defective notices [and] that contained conflicting dates, conflicting grounds for imposition of penalties." In addition, the Plaintiff alleged the IRS failed to give adequate notice to "Petitioner [sic] of his rights and obligations [sic]."

The Plaintiff, presumably by way of background, asserted that "[i]n TEFRA proceedings, the Commissioner determines penalties against partners on a partnership level determination, or stated otherwise, the negligence of the partnership acting through its managers."[4] The Debtor, in its Complaint, references cases, Treasury Regulations and

---

[4] Although the Plaintiff did not define the term, TEFRA stands for Tax Equity and Fiscal Responsibility Act of 1982.  It is set forth as Title IV of the Tax Equity and Fiscal

the Internal Revenue Service Manual pertaining to the definition and determination of

negligence, as well as the grounds for imposition of the accuracy-related penalty for

failing to attempt to reasonably comply with, or to carelessly, recklessly or intentionally

disregard, the Internal Revenue Code.

The Plaintiff further alleged that it, and its parent, Capitol BC, LLC, entered into a

management contract (the "Management Contract") with CRM, Inc. ("CRM"), "a

purpose of which was to, 'assist the [Petitioner] with respect to the day-to-day activities

and Management of the Restaurants. . . .'"  Under the Management Contract, CRM was

to prepare or cause to be prepared all necessary financial statements and sales and use

and personal property tax returns for the Debtor.  The Plaintiff alleged that CRM

"handled virtually all of the Petitioner's financial affairs."

The Plaintiff complained that the IRS, on November 17, 2015, sent it a notice at an

incorrect address in Iselin, New Jersey that its federal tax returns for 2012 and 2013 had

been selected for examination, adding that the FPAA also was incorrectly addressed to

"RRGK LLC, SOLE MBR" in Massachusetts when in fact its sole member is Capitol BC,

LLC.  By way of explanation, it averred, among other things, the following:  1) RRGK,

LLC was formed  in 2011 for the purpose of bidding at an auction to purchase the assets

of a group of restaurant-owning entities that had filed Chapter 11 cases in the United

States Bankruptcy Court for the District of Delaware, identified as "the Bugaboo Creek

---

Responsibility Act of 1982. 96 Stat. 648 (codified as amended at 26 U.S.C. §§ 6221–6232
(2006 ed. and Supp. V).

Entities;" 2) RRGK LLC offered the highest price at the auction and entered into an asset

purchase agreement dated March 8, 2011 pursuant to which it agreed to acquire the assets

comprising the businesses of the Bugaboo Creek Entities; 3) the United States Bankruptcy

Court for the District of Delaware approved the sale on March 11, 2011; 4) on March 18,

2011, RRGK LLC formed the Debtor as as a single member Delaware limited liability

company, filed an IRS Form SS-4 on behalf of the Debtor, and received a letter from the

IRS dated March 24, 2011 in which Capitol BC Restaurants, LLC was assigned the

employer identification number 45-1019863; 5) prior to the final sale of the Bugaboo Creek

Entities, RRGK LLC designated the Debtor as the purchaser of the assets, with certain

exceptions and the Debtor and the Bugaboo Creek Entities executed a Bill of Sale dated

April 21, 2011; 6) "RRGK LLC transferred its membership interests in Capitol BC

Restaurants LLC to Capitol BC, LLC, a Delaware limited liability company, whose direct

or indirect members included, amongst others, Banyan Mezzanine Fund L.P., Banyan

Mezzanine Fund II, L.P., Banyan Equity Investors, Inc., Banyan Equity Investors II, Inc.,

Stanley Shuman, Glenn Krevlin, and Richard Reiss, Jr. (but **not** RRGK LLC) (emphasis in

original);"[5] 7) an amended and restated limited liability agreement of Capitol BC

Restaurants, LLC was executed on April 21, 2011 designating Capitol BC, LLC as the sole

---

[5] In its Motion for (A) Approval of Debtor-in-Possession Financing, (B) the Entry of
Scheduling Order Regarding a Continued Hearing on Debtor–in–Possession Financing
and (C) Additional Relief, the Debtor represented: "The funding for the acquisition was
provided, in part, by equity contributions from Banyan, Banyan Mezzanine Fund II, L.P.,
Glenn J. Krevlin Revocable Trust, Reiss Capital Management, LLC, Richard Pawlowski,
Michael Solovay and Greg Morris" and identified those individuals and entities as
"Secured Lenders."

member of Capitol BC Restaurants, LLC;" and 8) RRGK LLC was liquidated in 2012. Based upon those averments, the Plaintiff alleged that the IRS knew or should have known that RRGK LLC was not the "Tax Matters Partner" for the Petitioner for the years in question.

On or about December 3, 2015, in response to the November 17, 2015 notice, the Debtor's former CEO and Tax Matters Partner for the tax year ending on December 31, 2014, Gregory Morris, and the CEO/Controller of CRM, Mark Lienwhol, contacted the accounting firm that prepared and filed the returns for the purpose of retaining that firm to handle the audit.  According to the Plaintiff, Mark Lienwhol was responsible for the Petitioner's account and signed returns prepared on behalf of the Debtor and "upon information and belief, first Gregory Morris and then Mark Lienwhol worked directly with BDO in connection with the audit."[6]  The Plaintiff alleged that it "reasonably relied on information it received that Mr. Morris and/or Mr. Lienwhol of the Management Company were addressing the audit request" because the owner of CRM, Richard Pawlowski, was the Debtor's CEO and Tax Matters Partner for the years 2012-2013 and Mr. Morris was the CEO and Tax Matters Partner in 2014.  The Plaintiff further alleged that CRM "was required by the Management Contract to take the actions necessary or advisable in connection with their [sic] responsibility to maintain financial statements and the books and records of the company," particularly as it "contracted with the tax preparer to file the returns and maintained the Petitioner's books and records."

---

[6] The Plaintiff did not further identify BDO.

The Plaintiff averred that certain members of its parent company received "Notices of Beginning of Administrative Proceedings" for the tax years 2013 and 2014. It alleged that CRM was "in sole possession of the books and records needed to respond to the audit," adding that it reasonably believed that CRM, which had maintained the books and records, and prepared financial statements and tax returns during the periods encompassed by the audit, "through its CEOs Mr. Lienwhol and its owner, Richard Pawlowski as well as Gregory Morris, the Petitioner's CEOs during 2013-2014 were, based on their communications with BDO, taking all reasonable and necessary steps to respond to the audit." In addition, it believed "in good faith" that Mark Lienwhol was taking all reasonable and necessary steps to handle the audit and that it did not learn until it received the FPAA Notices that no one appeared on its behalf in connection with the audit. It added that it was not negligent, "did not fail to include on an income tax return an amount of income shown on an information return," and was not careless or reckless and did not disregard the IRS's rules.[7]

Finally, the Plaintiff complained about the FPAA notice addressed to the "Tax Matters Partner of Capital [sic] BC Restaurants LLC" for the tax year ended on December 31, 2014 and to "Richard Pawlowski, Tax Matters Partner of Capital [sic] BC Restaurants LLC" which were issued postpetition on November 30, 2016 because they allegedly contained incorrect and misleading information, referencing the following:

---

[7] In other words, as stated in the Debtor's Opposition to the Motion to Dismiss, "[w]ith respect to the TEFRA issues, the IRS disallowed 100% of the Debtor's deductions for the tax years 2013 and 2014 (totaling approximately $22 million dollars) and imposed various penalties after the Debtor's representative apparently failed to appear for an audit."

a. Specifically, the notices imposed a ninety (90) day deadline within which the Petitioner was to file a petition in the Tax Court but failed to advise the Petitioner that: Relief from the automatic stay would be needed in order for the Petitioner to file his [sic] Petition in the Tax Court by the stated deadline.

b. That the Petitioner has the right to file its petition in the Bankruptcy Court.

c. That the Petitioner had an additional sixty (60) days within which to file its petition as a result of the pending bankruptcy proceeding.

The Plaintiff also alleged that the deadline in FPAA notices issued on December 6, 2016 conflicted with those in the earlier notices and contained conflicting grounds for the imposition of penalties.

Based upon the foregoing allegation, the Plaintiff formulated one Count for a determination of tax liability under 11 U.S.C. § 505 and sought the following relief:

1) "that the Court determine that the disallowance of appropriate business deductions was not supported and that the accuracy related penalty under IRC Section 6662 does not apply and that the 20 percent penalty should not be imposed due to negligence or disregard of rules and regulations as provided by IRC Section 6662(c);" and

2) "that the Court determine the claim of the Internal Revenue Service in this action and otherwise strike and disallow any claim that exceeds that amount."

As noted above, the Plaintiff did not explicitly reference the proof of claim filed by the IRS for FICA and FUTA taxes, which it amended after the filing of this adversary proceeding, and none of the substantive factual allegations in the Complaint relate to the proof of claim or the FICA and FUTA taxes that were assessed directly against the Debtor in its capacity as an employer.   According to the IRS, the Debtor is directly liable for those taxes, and it does not contest this Court's jurisdiction to adjudicate an objection to its proofs of claim.

## IV. ARGUMENTS OF THE PARTIES

A. <u>The IRS's Arguments</u>

The IRS prefaces its argument by observing:

> [The Debtor] has provided no basis for an objection to the IRS's proof of claim — its complaint contains no references to employment taxes. The initial claim included estimates for recent periods for which returns had not been filed, but any issue over those periods is now moot because the IRS has amended its claim for employment taxes, reducing to zero the taxes and interest due for the recent periods. The assessed liabilities on the claim are based on filed employment tax returns and, as to those assessments, the Court should dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), applicable under Federal Rule of Bankruptcy Procedure 7012(b), for failure to state a claim.

In the view of the IRS, the Debtor did not object to the proof of claim it filed for FICA and FUTA taxes and, accordingly, its Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

The IRS also argues that, because the Debtor "as a partnership" for tax purposes, it "is not subject to income taxation."[8] It adds that the Debtor is attempting to have this Court determine its non-debtor partners' income tax liability even thought the partners have another forum available to determine their liability. In short, the IRS seeks dismissal of the Debtor's Complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. The IRS argues that the United States has not waived sovereign immunity as to the determination of the partners' tax liabilities, adding that because there is no bankruptcy jurisdiction, the Debtor lacks constitutional standing to maintain this action. In the

---

[8] As noted above, the Debtor filed Form 1065, U.S. Return of Partnership Income, which is an informational return.

alternative, the IRS urges this Court to abstain and allow the real parties-in-interest, namely the non-debtor partners, to pursue relief available to them in the Tax Court, a federal district court, or the Court of Federal Claims.

B. The Debtor's Arguments

In response, the Debtor, while agreeing with the the IRS's description of administrative proceedings under TEFRA, argues that this Court should reject the IRS's position with respect to subject matter jurisdiction, stating:

> By taking the position that a TEFRA challenge brought by a Debtor in bankruptcy court is nothing more than an action brought on behalf of non-debtors to determine the tax liabilities of non-debtor partners, the United States invites this court to adopt what amounts to a TEFRA exception to § 505 jurisdiction. This court should decline that invitation as the clear and unambiguous language of § 505 authorizes the bankruptcy court to "determine the amount or legality of any tax, . . ." *See* Section 505(a)(1). This is a timely proceeding brought to determine the tax consequences of the Debtor partnerships' activities. Jurisdiction is supported by both § 505 and by well-reasoned, post-TEFRA decisions holding that the bankruptcy court does have jurisdiction to determine the TEFRA tax consequences of the partnerships' activities even where it necessarily results in a determination of the tax liability of non-debtor partners.

The Debtor argues that 11 U.S.C. § 106(a) abrogates sovereign immunity where a governmental unit has filed a proof of claim and, without limitation, pursuant to 11 U.S.C. § 505.  It states that "§ 106(a) does not require the IRS to file a proof of claim in order to waive sovereign immunity. Rather, § 106(a) requires only that the IRS possess a claim, that is, a right to payment, and that the debtor's claim and the IRS's claim arise out of the same transaction or occurrence (i.e., that the claims are related)." The Debtor also urges the Court to distinguish the decision in Am. Principals Leasing Corp. v. United States, 904 F.2d 477 (9th Cir. 1990), discussed below.

The Debtor, among other arguments, maintains that this Court has "related-to" jurisdiction under the expansive definition adopted by the United States Court of Appeals for the Third Circuit in <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds by* <u>Things Remembered, Inc. v. Petrarca</u>, 516 U.S. 124 (1995).  It contends that, if this Court were to determine the tax consequences to the activities of the Debtor, such a determination potentially would give rise to a claim against CRM, the entity responsible for the Debtor's finances and that such a claim would inure to the benefit of the bankruptcy estate.

The Debtor also argues that it possesses constitutional standing to maintain its action, stating:

> Congress has spoken without ambiguity and with full knowledge that the bankruptcy court does not have jurisdiction over a TMP [tax managing partner] who is not also a debtor. Barring a declaration that § 505 is unconstitutional to the extent it grants standing to a partnership debtor to pursue a determination of "any" tax, this court should reject the claim that the debtor lacks constitutional standing to pursue this action.

The Debtor adds:

> The Debtor agrees that the prudential standing inquiry is essentially "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to relief." <u>Warth v. Seldin</u>, 422 U.S. 490, 500 (1975). This claim rests on § 505, a statutory provision that can only be understood, and that has been understood, as granting Debtors subject to TEFRA administrative adjustments the standing to pursue their claims in the bankruptcy court. Section 505 jurisdiction is not confined to cases in which non-debtors have no alternative avenue for relief nor was it intended to take a back seat to cases in which they do. Here, the bankruptcy court is the only forum through which this Debtor may assert its claim for a determination of the tax consequences of the activities of the partnership.

Finally, the Debtor argues that this Court should not abstain from exercising jurisdiction.

C. The IRS's Response to the Debtor's Arguments

In response to the Debtor's Opposition, the IRS maintains that the Debtor

misinterprets the applicable case law, reasoning that "[t]he dearth of case law likely exists

because a debtor-partnership's non-debtor partners typically go to Tax Court (or a district

court or the Court of Federal Claims) under these circumstances, consistent with TEFRA's

judicial review framework." It adds that 28 U.S.C. § 1334(b) does not provide the

bankruptcy court with jurisdiction to resolve the partners' tax liabilities under TEFRA,

and, in particular, there is no "related to" jurisdiction because the Debtor "has not shown

how the proposed adjustments in the FPAAs could have an impact on the estate." The

IRS emphasizes that the Debtor's estate will not be liable for the taxes, penalty, or interest,

even if the adjustments become final, citing Fidelity Int'l Currency Advisor A Fund, LLC,

by Tax Matters Partner v. United States, 747 F.Supp. 2d 49, 237 (D. Mass. 2010), aff'd, 661

F.3d 667 (1st Cir. 2011); 26 U.S.C. § 701 (providing that partners, not partnerships, are

liable for income tax).

## V. DISCUSSION

For the reasons set forth below, the Court dismisses the Debtor's Complaint

without prejudice to a determination of any objections the Debtor might have to the

amended proof of claim filed by the IRS for FICA and FUTA taxes owed by the Debtor,

which objections can and should be addressed in the context of a contested matter in the

main bankruptcy case.

A. <u>Dismissal for Lack of Jurisdiction</u>

This Court in <u>Riley v. Lexmar Global, Inc. (In re Progression, Inc.</u>, 559 B.R. 8 (Bankr.

D. Mass. 2016), stated:

> According to the court in <u>Portland Pipe Line Corp. v. City of South</u>
> <u>Portland</u>, 164 F.Supp.3d 157 (D. Me. 2016),
>
>> Under Rule 12(b)(1), a court must dismiss a case over which
>> it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The
>> plaintiff, as the party asserting subject matter jurisdiction, has
>> the burden of demonstrating its existence. <u>Aversa v. United</u>
>> <u>States</u>, 99 F.3d 1200, 1209 (1st Cir. 1996). . . . [T]he Plaintiffs
>> bear the burden of establishing both standing and ripeness.
>> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561, 112 S.Ct.
>> 2130, 119 L.Ed.2d 351 (1992) (standing); <u>R.I. Ass'n of Realtors</u>
>> <u>v. Whitehouse</u>, 199 F.3d 26, 30 (1st Cir. 1999) ("The burden of
>> establishing standing rests with the party who invokes
>> federal jurisdiction"); <u>id.</u> at 33 ("[T]he plaintiff must adduce
>> facts sufficient to establish both fitness and hardship"). In
>> determining whether jurisdiction is proper, a court must
>> construe the alleged facts in the plaintiff's favor, and it may
>> consider extrinsic materials. <u>Aversa</u> at 1209–10, ("In ruling on
>> a motion to dismiss for lack of subject matter jurisdiction
>> under Rule 12(b)(1), the district court must construe the
>> complaint liberally, treating all well-pleaded facts as true and
>> indulging all reasonable inferences in favor of the plaintiff. In
>> addition, the court may consider whatever evidence has been
>> submitted . . . ." (citations omitted).
>
> <u>Portland Pipe Line Corp.</u>, 164 F.Supp.3d at 173–74. *See also* Gonzalez v. U.S.,
> 284 F.3d 281, 288 (1st Cir. 2002).

<u>In re Progression, Inc.</u>, 559 B.R. at 1–11.   Accordingly, the Debtor has the burden of

establishing that this Court has subject matter jurisdiction.

Section 1334 of title 28 provides district courts with "original and exclusive

jurisdiction of all cases under title 11." 28 U.S.C. § 1334(a).   Bankruptcy proceedings are

divided into three categories: "those that "aris[e] under title 11"; those that "aris[e] in" a

15

Title 11 case; and those that are "related to a case under title 11." Stern v. Marshall, 564

U.S. 462, 473 (2011) (citing 28 U.S.C. § 157(a)). District courts may refer any or all such

proceedings to the bankruptcy judges of their district, *see* LR, D. Mass. 201, and also may

withdraw a case or proceeding referred to the bankruptcy court "for cause shown."

Stern, 564 U.S. at 473 (citing 28 U.S.C. § 157(d)).  How a bankruptcy judge may act on a

referred matter depends on the type of proceeding involved.  Bankruptcy judges may

hear and enter final judgments in "all core proceedings arising under title 11, or arising

in a case under title 11." Id. at 474 (citing 28 U.S.C. § 157(b)(1)).

Count I does not "arise under" the Bankruptcy Code. "'[A]rising under'

proceedings are (at least) those cases in which the cause of action is created by title 11."

N.E. Power & Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. &

Marine, Inc.), 292 F.3d 61, 68 (1st Cir. 2002); Metromedia Fiber Network, Inc. v. Various

State and Local Taxing Authorities (In re Metromedia Fiber Network, Inc.), 299 B.R. 251,

270-71 (Bankr. S.D.N.Y. 2003).[9]  The United States Court of Appeals for the First Circuit

recently stated:

---

[9] In that case, the bankruptcy court observed:

> Section 505 of the Bankruptcy Code permits the court in a bankruptcy case
> to make determinations of tax liability under federal or state tax laws. But
> a proceeding under Section 505, while authorized by the Bankruptcy Code,
> is not a proceeding or claim arising under any provision of the Bankruptcy
> Code. The substantive determination to be made in a Section 505
> proceeding is one arising under and must be made in accordance with the
> relevant provisions of state or federal tax law. A debtor's claim under
> federal or state tax law, like claims by or against a debtor arising under state
> or federal common law or statutes other than the Bankruptcy Code, may be
> within the non-exclusive jurisdiction of federal district or bankruptcy

The "arising under" language of § 1334(b) is "analogous to the 'arising under' language in 28 U.S.C. § 1331." In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68 (comparing "arising under" jurisdiction to federal question jurisdiction). In other words, proceedings "aris[e] under title 11" when the Bankruptcy Code itself creates the cause of action. *See* Stoe v. Flaherty, 436 F.3d 209, 217 (3d Cir. 2006) (noting that "arising under" jurisdiction is limited to proceedings where "the Bankruptcy Code creates the cause of action or provides the substantive right invoked"); Wood v. Wood (In re Wood), 825 F.2d 90, 96 (5th Cir. 1987) ("Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11.").

Gupta v. Quincy Med. Ctr., No. 15-1183, 2017 WL 2389407, at *4 (1st Cir. June 2, 2017).

Moreover, "'[a]rising in' proceedings generally 'are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.'" In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68 (citing, inter alia, Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987)). In Gupta v. Quincy Med. Ctr., the First Circuit explained:

> [I]t is not enough for "arising in" jurisdiction that a claim arose in the context of a bankruptcy case. Instead, our case law makes clear that for "arising in" jurisdiction to apply, the relevant proceeding must have "no existence outside of the bankruptcy." Hence, there is no "but for" test for "arising in" jurisdiction as Appellants suggest. That is, "the fact that a matter would not have arisen had there not been a bankruptcy case does not ipso facto mean that the proceeding qualifies as an 'arising in' proceeding." Instead, the fundamental question is whether the proceeding by its nature, not its particular factual circumstance, could arise only in the context of a bankruptcy case.

2017 WL 2389407, at *6 (citations omitted).

---

courts under 28 U.S.C. §§ 1334(b) and 157(a), but they do not fall within the limits of the power to establish bankruptcy laws under Article I, Section 8, Clause 4.

In re Metromedia Fiber Network, Inc., 299 B.R. at 270–71.

Core proceedings include, "but are not limited to sixteen types of matters, including "(A) matters concerning the administration of the estate;" and "(B) allowance or disallowance of *claims against the estate* . . ." 28 U.S.C. § 157(b)(2) (emphasis supplied). If a matter is not a core proceeding but is "related to a case under title 11, the bankruptcy judge, absent the consent of the parties, may only "submit proposed findings of fact and conclusions of law to the district court" and the district court then enters final judgment after reviewing de novo any matter to which a party objects. *See* 28 U.S.C. § 157(c)(1). *See generally,* Stern v. Marshall, 564 U.S. at 474-75.

The Court concludes that the Debtor's Complaint does not "arise under" the Bankruptcy Code and the relief sought does not "arise in" the bankruptcy case. The Court also concludes that the Complaint does not involve a core proceeding - - the IRS is not a creditor of the Debtor partnership with respect to "claims" set forth in the FPAA Notices which the Debtor seeks to readjust and does not have an income tax claim against the Debtor's estate, just claims for FUTA and FICA taxes which the parties do not dispute are owed solely by the Debtor, not its "partners." *See* 28 U.S.C. § 157(b)(1) and (2). Moreover, resolution of the tax liabilities of the partners does not affect the administration of the bankruptcy case.

The Court also concludes that Count I of the Debtor's Complaint under 11 U.S.C. § 505 is not "related to" its bankruptcy case as any determination of the appropriateness of the disallowed deductions and penalties will have no effect on the Debtor's bankruptcy estate for the simple reason that the Debtor is not liable for the taxes potentially owed by its "partners." *See* Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other*

18

*grounds by* Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995); In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991), *overruled on other grounds by* Conn. Nat'l Bank v. Germain, 503 U.S. 249 (1992). *See also* Gupta v. Quincy Med. Ctr., 2017 WL 2389407, at *4. In other words, because the IRS is neither a creditor with respect to the relief sought in the Complaint nor the holder of an income tax claim against the Debtor's bankruptcy estate, the outcome of the litigation can have no effect on the bankruptcy estate, "'such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate.'" Boston Reg'l Med. Ctr., Inc. v. Reynolds (In re Boston Reg'l Med. Ctr., Inc.), 410 F.3d 100, 105 (1st Cir. 2005) (citing In re G.S.F. Corp., 938 F.2d at 1475). The Debtor's argument that it might have a potential claim against CRM so as to confer related to jurisdiction on this Court is too speculative to warrant consideration, particularly where there is every likelihood that the Debtor's case will soon be converted to a case under Chapter 7.

An understanding of TEFRA is critical to resolution of the issue of whether the plain language of § 505 confers jurisdiction on this Court and constitutes an abrogation of sovereign immunity. The United States Supreme Court in United States v. Woods, 134 S.Ct. 557 (2013), set forth basic principles applicable to partnership taxation under TEFRA. An understanding of those principles informs this Court's decision. The Supreme Court stated:

> A partnership does not pay federal income taxes; instead, its taxable income and losses pass through to the partners. 26 U.S.C. § 701. A partnership must report its tax items on an information return, § 6031(a), and the partners must report their distributive shares of the partnership's tax items on their own individual returns, §§ 702, 704.

19

Before 1982, the IRS had no way of correcting errors on a partnership's return in a single, unified proceeding. Instead, tax matters pertaining to all the members of a partnership were dealt with just like tax matters pertaining only to a single taxpayer: through deficiency proceedings at the individual-taxpayer level. *See generally* §§ 6211–6216 (2006 ed. and Supp. V). Deficiency proceedings require the IRS to issue a separate notice of deficiency to each taxpayer, § 6212(a) (2006 ed.), who can file a petition in the Tax Court disputing the alleged deficiency before paying it, § 6213(a). Having to use deficiency proceedings for partnership-related tax matters led to duplicative proceedings and the potential for inconsistent treatment of partners in the same partnership. Congress addressed those difficulties by enacting the Tax Treatment of Partnership Items Act of 1982, as Title IV of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA). 96 Stat. 648 (codified as amended at 26 U.S.C. §§ 6221–6232 (2006 ed. and Supp. V)).

Under TEFRA, partnership-related tax matters are addressed in two stages. First, the IRS must initiate proceedings at the partnership level to adjust "partnership items," those relevant to the partnership as a whole. §§ 6221, 6231(a)(3). It must issue an FPAA notifying the partners of any adjustments to partnership items, § 6223(a)(2), and the partners may seek judicial review of those adjustments, § 6226(a)–(b). Once the adjustments to partnership items have become final, the IRS may undertake further proceedings at the partner level to make any resulting "computational adjustments" in the tax liability of the individual partners. § 6231(a)(6). Most computational adjustments may be directly assessed against the partners, bypassing deficiency proceedings and permitting the partners to challenge the assessments only in post-payment refund actions. § 6230(a)(1), (c). Deficiency proceedings are still required, however, for certain computational adjustments that are attributable to "affected items," that is, items that are affected by (but are not themselves) partnership items. §§ 6230(a)(2)(A)(i), 6231(a)(5).

United States v. Woods, 134 S. Ct. at 562–63. *See also* Chai v. Comm'r of Internal Revenue,

851 F.3d 190, 195-96 (2nd Cir. 2017). In Woods, the Supreme Court observed that "[u]nder

the TEFRA framework, a court in a partnership-level proceeding . . . has jurisdiction to

determine not just partnership items, but also "the applicability of any penalty . . . which

relates to an adjustment to a partnership item." § 6226(f)." Id. at 563. It held:

TEFRA gives courts in partnership-level proceedings jurisdiction to determine the applicability of any penalty that could result from an adjustment to a partnership item, even if imposing the penalty would also require determining affected or non-partnership items such as outside basis. *The partnership-level applicability determination, we stress, is provisional: the court may decide only whether adjustments properly made at the partnership level have the potential to trigger the penalty. Each partner remains free to raise, in subsequent, partner-level proceedings, any reasons why the penalty may not be imposed on him specifically.*

<u>Woods</u>, 134 S. Ct. at 564 (emphasis supplied). [10] *See also* <u>Fidelity Int'l Currency Advisor A Fund, LLC by Tax Matters Partner v. United States,</u> 747 F.Supp.2d at 237.

The parties also focus on the interrelationship between § 106 and § 505 of the Bankruptcy Code. The Court need not address any issues with respect to sovereign immunity, however, if it concludes that § 505 does not provide a vehicle for conferring jurisdiction for determining the IRS's claims against the Debtor's partners arising from the IRS's disallowance of the Debtor's deductions for tax years 2013 and 2014, as well as the imposition of substantial penalties, where there is no dispute that the Debtor is not liable for the taxes addressed in the FPAA Notices.

Section 505(a) provides in pertinent part the following:

(a)(1) Except as provided in paragraph (2) of this subsection, the court *may* determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

---

[10] Section 6221 of title 26 provides: "Except as otherwise provided in this subchapter, the tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level." 26 U.S.C.A. § 6221. This statute does not confer jurisdiction on this Court simply because the Debtor is considered a partnership for tax purposes.

11 U.S.C. § 505(a)(1)(emphasis added).  Section 505(c) provides that "[n]otwithstanding section 362 of this title, after determination by the court of a tax under this section, the governmental unit charged with responsibility for collection of such tax may assess such tax *against the* estate, the debtor, or a successor to the debtor, as the case may be subject to otherwise applicable law."11 U.S.C. § 505(c)(emphasis added).

As subsection (a)(2) is inapplicable, the issue presented by the language of § 505(a)(1) is whether it applies to taxes which are not owed by the bankruptcy estate.  If the exceptions set forth in § 505(a)(2) are inapplicable, the sovereign immunity of the IRS or any other governmental units is waived.  The IRS maintains that sovereign immunity is not waived and this Court lacks jurisdiction with respect to the provisions of § 505 in a partnership's bankruptcy case because only non-debtor "partners" of the Debtor are liable for the taxes at issue.  This Court agrees.

The IRS points to the structure of the Bankruptcy Code, and in particular the location of § 505 in Subchapter 1, captioned "Creditors and Claims," of Chapter 5, captioned "Creditors, the Debtor, and the Estate."  It also points to the definition of "creditor," and "claim."  *See* 11 U.S.C. § 101(10) and (5), concluding that "[b]y placing a statutory provision that abrogates taxing authorities' sovereign immunity in a subchapter entitled "Creditors and Claims," Congress indicated that creditors of the debtor who are taxing authorities could have their claims against the debtor decided by the bankruptcy court, relying upon Am. Principals Leasing Corp. v. United States, 904 F.2d 477 (9th Cir. 1990).  In that case, American Principals Leasing Corporation (APLC) and twenty-four limited partnerships, debtors in a bankruptcy case, appealed a district court's dismissal

22

for lack of bankruptcy jurisdiction of that portion of their complaint seeking to adjudicate the tax consequences of partnership activities or the tax liabilities of non-debtor partners. Id. at 478.  APLC was the sole and managing general partner of the limited partnerships. Id. at 479.

The Court concludes that the Debtor's attempt to distinguish Am. Principals Leasing Corp. is unavailing and that the IRS is justified in relying upon its holding.  In that case, the United States Court of Appeals for the Ninth Circuit summarized the appellants' argument which mirrors that advanced by the IRS in this adversary proceeding.  It stated the following:

> Appellants . . . state that determination of the tax consequences of the partnerships' activities is essential to their Chapter 11 reorganizations. They claim, for example, that the partnerships' ability to collect remaining payments from partners is dependent upon resolution of the tax issues. Appellants contend that Congress meant section 505 to be sufficiently broad to enable bankruptcy courts to determine tax issues essential to a debtor's ability to reorganize.

Id. at 480.  The Ninth Circuit rejected the appellants' argument, referencing the legislative history and stating the following:

> Despite section 505's broad language, "virtually all the courts which have considered the issue most recently concluded that § *505(a) does not extend the bankruptcy court's jurisdiction to parties other than the debtor.*" In re Brandt Airflex Corp., 843 F.2d 90, 95 (2nd Cir. 1988) (citing cases). These courts have noted that a literal reading of section 505 would have the absurd result of turning the bankruptcy courts into a second tax court system. Id. at 96. Indeed, the legislative history of section 505 makes clear that the section was intended only to "permit determination by the bankruptcy court of any unpaid tax liability of the debtor." Id. (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 67), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5853; H.R.Rep. No. 595, 95th Cong., 2d Sess. 356, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6312 (emphasis added).

Id. at 480-81.   The Ninth Circuit also reviewed the location of § 505 in the

Bankruptcy Code and the definitions of "creditor" and "claim," observing the

following:

> Section 505's location in Subchapter I of Chapter 5 of the bankruptcy code supports this conclusion. Chapter 5 concerns, as its title indicates, "Creditors, the Debtor, and the Estate." Subchapter I concerns, as its title indicates, "Creditors and Claims." Section 501(a) specifies that only claims held by "creditors" may be filed in a bankruptcy case. Section 101(9) defines a creditor as one who has "a claim against the debtor," "a claim against the estate," or "a community claim." 11 U.S.C. § 101(9)(A), (B), (C) (emphasis added). This indicates that in section 505 Congress intended to deal with tax liabilities only of the debtor. This conclusion is supported by section 505(c), which states that "[n]otwithstanding [the automatic stay provision of] section 362 of this title, after a determination by the court of a tax under this section, the governmental unit charged with responsibility for collection of *such tax* may assess *such tax against the estate, the debtor, or a successor to the debtor*" (emphasis added). We thus conclude that section 505 does not permit the bankruptcy court to determine the tax liabilities of the non-debtor partners.

Id. at 481.  The court also observed:

> First, although appropriate tax treatment of partnership items generally depends on the characteristics of the partnership, for the bulk of the taxable years at issue here, each partner is entitled to a separate administrative and judicial determination of his partnership-related tax liability. And Congress did not amend the tax code to provide for a unified determination of the tax consequences of partnership activities until four years after it enacted section 505. Therefore, it is unrealistic to conclude that section 505 was enacted for the purpose of remedying the problem which the amendment to the tax statute aimed to correct. Second, and more importantly, section 505 grants bankruptcy courts jurisdiction to determine any *tax liability* of the debtor. *Here the partnerships, as non-taxable entities, have no tax liability. Section 505 does not grant the bankruptcy courts authority to determine the tax consequences for third parties of a debtor's activities.*

Id. The Ninth Circuit recognized that the district court had jurisdiction to determine the

tax liability of APLC which was a partner in its affiliated debtor partnerships, but noted

that the IRS had not assessed taxes against it.  It also noted that "such a determination would not be binding on the government or the other partners in subsequent litigation." Id. at 482 (citing United States v. Mendoza, 464 U.S. 154, 162–64 (1984)).

The Ninth Circuit reaffirmed those principles it set forth in Am. Principals Leasing Corp. in Cent. Valley AG Enters. v. United States, 531 F.3d 750, 760 (9th Cir. 2008).  In that case, it observed:

> As to the non-debtor partners, we reasoned that because § 505 does not extend bankruptcy jurisdiction to parties other than the debtor, the statute does not permit a bankruptcy court to determine either the tax liabilities of non-debtor partners or the tax consequences for them of the debtor-partnerships' activities. Id. at 481. Rejecting the non-debtor partners' attempt to piggyback on the partnerships' debtor status, we reasoned that because partnerships as nontaxable entities have no tax liability and § 505 extends only to debtors with tax liability, the statute cannot be read to authorize bankruptcy courts to determine the tax consequences for third parties of the debtor partnerships' activities. Id.
>
> As to the lone debtor-partner, by contrast, the same reasoning led to the opposite result. Section 505 authorized the district court to exercise bankruptcy jurisdiction to determine both the tax liability of the debtor partner and, as a necessary component of that liability, the tax consequences of the partnerships' activities.  . . . Although American Principals concerned pre-TEFRA tax years, the enactment of TEFRA made no changes to the legal principles underlying our decision. Indeed, TEFRA's own language reaffirms the fundamental interrelatedness between partnership items and a partner's tax liability.

Cent. Valley AG Enters. v. United States, 531 F.3d at 760 (emphasis supplied).

The Court agrees with the decisions from the Ninth Circuit and believes the United States Court of Appeals for the First Circuit would reach a similar result.   Moreover, the Supreme Court holding in Woods reinforces the Court's conclusion as the Supreme Court observed that "[t]he partnership-level applicability determination . . .  is provisional . . .  Each

25

*partner remains free to raise, in subsequent, partner-level proceedings, any reasons why the penalty may not be imposed on him specifically.* Woods, 134 S. Ct. at 564 (emphasis supplied). *See also* Fidelity Int'l Currency Advisor A Fund, LLC, 747 F.2d at 237.[11]   Accordingly, any determination by this Court of the Debtor's deductions or the penalty imposed would not be binding on the partners and, thus, would constitute a waste of judicial resources. Moreover, because the IRS is not a creditor of the Debtor, except for FICA and FUTA taxes, there is no waiver of sovereign immunity.

B. Abstention

In the alternative, and mindful that certain courts in partnership-level proceedings have jurisdiction to determine not just partnership items, but also "the applicability of any penalty . . . which relates to an adjustment to a partnership item, *see* 26 U.S.C. § 6226(f), and in the event that the First Circuit were to construe § 505 in the same manner as urged by the Debtor so as to confer jurisdiction on this Court as a "related to" proceeding, this Court shall enter an order of abstention.   Not only is the language of §

---

[11] The district court observed:

> Tax penalties are generally determined on an individual partner level. *See* Carroll v. United States, 339 F.3d 61, 68 (2d Cir. 2003). However, this Court has jurisdiction to determine "the applicability of any penalty . . . which relates to an adjustment to a partnership item." 26 U.S.C. § 6226(f); *see* Treas. Reg. § 301.6221–1(c). Furthermore, partnership-level determinations "include all the legal and factual determinations that underlie the determination of any penalty," other than "partner-level defenses." Treas. Reg. § 301.6221–1(c). Individual partners may, however, raise partner level defenses in later proceedings. 26 U.S.C. § 6230(c)(4).

747 F.Supp.2d at 237.

26

505(a) permissive, ("... the court may determine the amount or legality of any tax ..."),

circumstances exist that warrant abstention.

> Section 1334(c)(1) provides:
>
> Nothing in this section prevents a district court in the interest of justice, or
> in the interest of comity with State courts or respect for State law, from
> abstaining from hearing a particular proceeding arising under title 11 or
> arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1). Thus, under the statute, three criteria exist: "the interests of justice,

comity and respect for State law. In re Middlesex Power Equip. & Marine, Inc., 292 F.3d

at 69. Additional factors include "'the extent to which state law issues predominate over

bankruptcy issues'; 'the presence of a related proceeding commenced in state court or

other nonbankruptcy court'; and 'the likelihood that the commencement of the

proceeding in bankruptcy court involves forum shopping by one of the parties.'" Id.

(citing, inter alia, Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d

1162, 1166–67 (9th Cir. 1990) (quoting Republic Reader's Serv., Inc. v. Magazine Serv.

Bureau, Inc. (In re Republic Reader's Serv., Inc.), 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987))

(internal quotations omitted) (adopting a twelve-factor test to ascertain whether

permissive abstention is appropriate in any given case).

Although the Debtor's Complaint does not involve issues of state law, only

nonbankruptcy federal law, this Court concludes that abstention is warranted. The

Debtor's "partners" have other forums in which their tax liabilities, if any, for the years

in question can be determined, and they can assert the defenses referenced by the Debtor

in its Complaint. 26 U.S.C. § 6226.[12] "According to the Tenth Circuit, "Congress pretty

clearly seemed to contemplate a regime in which any partner may assert any "partner

level defenses" that may apply. And by statute the reasonable cause/good faith defense

appears to be one available at the partner level: after all, it applies when (among other

things) the "taxpayer" can show he acted in good faith and (again) under TEFRA it is

usually the partner who is the taxpayer." McNeill v. United States, 836 F.3d 1282, 1284

(10th Cir. 2016) (citing 26 U.S.C. §§ 6230(c)(4) and 6664(c)(1)).  Because any determination

by this Court would not be binding upon the "partners" who are not interested parties in

---

[12] That section provides in pertinent part:

> (a) Petition by tax matters partner.--Within 90 days after the day on which
> a notice of a final partnership administrative adjustment is mailed to the tax
> matters partner, the tax matters partner may file a petition for a
> readjustment of the partnership items for such taxable year with--
>
> > (1) the Tax Court,
> > (2) the district court of the United States for the district in
> > which the partnership's principal place of business is located,
> > or
> > (3) the Court of Federal Claims.
>
> (b) Petition by partner other than tax matters partner.--
>
> > (1) In general.--If the tax matters partner does not file a
> > readjustment petition under subsection (a) with respect to any
> > final partnership administrative adjustment, any notice
> > partner (and any 5-percent group) may, within 60 days after
> > the close of the 90-day period set forth in subsection (a), file a
> > petition for a readjustment of the partnership items for the
> > taxable year involved with any of the courts described in
> > subsection (a).

26 U.S.C. § 6226.

this proceeding, no purpose would be served by determining taxes for which the estate

would not be liable.  *See* 26 U.S.C. § 6230(c)(4).[13]  Moreover, in view of the liquidation of

the Debtor's assets and the pending motion to convert the case to a case under Chapter

7, as well as the funding of the instant litigation by Banyan and the potential claim by

"partners" against CRM, all of whom may be necessary parties to any litigation over

which this Court lacks jurisdiction, this Court exercises its discretion to abstain from and

concomitantly dismisses this adversary proceeding pursuant to 28 U.S.C. § 1334(c)(1).

C. Dismissal for Failure to State a Claim

The IRS also seeks dismissal of the complaint with respect to its proof of claim as

amended for FICA and FUTA taxes.  "In order to survive dismissal, a complaint need not

set forth 'detailed factual allegations,' Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127

S.Ct. 1955, 167 L.Ed.2d 929 (2007), but it must 'contain sufficient factual matter . . . to state

a claim to relief that is plausible on its face,' Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct.

---

[13] That section provides:

> (c)(4) No review of substantive issues.--For purposes of any claim or suit
> under this subsection, the treatment of partnership items on the partnership
> return, under the settlement, under the final partnership administrative
> adjustment, or under the decision of the court (whichever is appropriate)
> shall be conclusive. In addition, the determination under the final
> partnership administrative adjustment or under the decision of the court
> (whichever is appropriate) concerning the applicability of any penalty,
> addition to tax, or additional amount which relates to an adjustment to a
> partnership item shall also be conclusive. *Notwithstanding the preceding
> sentence, the partner shall be allowed to assert any partner level defenses that may
> apply or to challenge the amount of the computational adjustment.*

26 U.S.C. § 6230(c)(4)

1937, 173 L.Ed.2d 868 (2009) (citation omitted)." <u>Privitera v. Curran (In re Curran)</u>, 855 F.3d 19, 25 (1st Cir. 2017).   "If the facts articulated in the complaint are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture,' the complaint is vulnerable to a motion to dismiss. <u>Id.</u> (citing <u>SEC v. Tambone</u>, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)).

In its Complaint, the Debtor did not mention, let alone specifically object to, the proof of claim, which it later amended, filed by the IRS for FICA and FUTA taxes. Accordingly, with respect to the oblique reference to an objection to the proof of claim, the Debtor's Complaint must be dismissed under <u>Twombly</u> and <u>Iqbal</u>.

## VI. CONCLUSION

In view of the foregoing, the Court shall enter an order dismissing the Debtor's Complaint to the extent it seeks a determination of taxes for which it is not liable for lack of subject matter jurisdiction.   Dismissal is without prejudices to whatever rights the Debtor's "partners" may have to resolve the dispute with the IRS in the appropriate forum.

To the extent, the Debtor is objecting to the IRS's proof of claim, as amended, for

30

which there is no dispute the Debtor is liable, the Court shall enter an order dismissing the Complaint without prejudice for failure to state a claim upon which relief can be granted.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  June 12, 2017